UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH SAAD and ZIHRA SAAD,

        Plaintiffs,

                                  Case No. 11-10103

v.

                                  Honorable Patrick J. Duggan

CITY OF DEARBORN HEIGHTS, SCOTT
KELLER, individually and in his official
capacity, CARRIE CATES, individually and
in her official capacity, RESERVE
OFFICER NASON, individually and in his
official capacity, GREG GONDEK,
individually and in his official capacity,
JERRY SKELTON, individually and in his
official capacity, and JOHN DOE
OFFICERS 1-XXX, individually and in their
official capacities,

        Defendants.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 26, 2012.

PRESENT:     THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

     In this action, Joseph Saad and Zihra Saad ("Plaintiffs") allege that Dearborn Heights

police officers violated their civil rights and caused them injuries during an encounter at

the Saad residence.  Their suit names as defendants the City of Dearborn Heights, Officer

Scott Keller, Officer Carrie Cates, Reserve Officer Nason, Officer Greg Gondek, Sergeant

Jerry Skelton, and several unidentified police officers (collectively, "Defendants").  Before

the Court is Defendants' motion for summary judgment, filed on March 5, 2012 pursuant

to Federal Rule of Civil Procedure 56.  Also before the Court is Defendants' motion to

strike Plaintiffs' Sur-reply, filed on April 12, 2012.  These matters have been fully briefed,

and the Court heard oral argument on June 11, 2012.  For reasons set forth below, the

Court denies the motion to strike.  The Court also grants in part and denies it in part the

motion for summary judgment.

## I. Background

On July 10, 2010, Officer Scott Keller was dispatched to a home on Melborne street

in Dearborn Heights to investigate a report of harassing phone calls.  Officer Keller spoke

with a Ms. Solak who explained that Plaintiff Joseph Saad had left a threatening message

on her answering machine.  Solak explained that Joseph Saad had a history of leaving her

threatening messages, and identified the home just down the street where he lived.

Officer Keller drove over to the Saad home and knocked on the front door.  Joseph

Saad opened the door, and the parties dispute the events that ensued.  Officer Keller claims

that he asked Joseph Saad about the message on Ms. Solak's answering machine, and that

Joseph admitted to leaving the message.  According to Officer Keller, Joseph Saad became

irate when asked for identification, shoved him backward with his hands, and told him to

get off the property.  Prelim. Exam. Tr. 9:15-22, Aug. 18, 2010.  Officer Keller testified

that Joseph Saad tried to slam the door shut, but was prevented from doing so because the

deadbolt was engaged.  Prelim. Exam. Tr. 10:3-8.  Officer Keller claims that at this point,

he placed his foot in the threshold of the door to prevent it from being shut.  Joseph Saad

2

testified that as soon as he opened the front door, Officer Keller put his foot inside the house to prevent the door from closing. J. Saad Dep. 27:1-5, Sep. 12, 2011. It is undisputed that Joseph Saad tried repeatedly to close the door, but could not do so because Officer Keller refused to move his foot. Joseph Saad called out to his mother, Zihra Saad, who was in another room, stating that the police were harassing him. Zihra Saad came to the front door, where she began arguing with Officer Keller. Officer Keller also asked to see Zihra Saad's identification.

Officer Keller called for backup, and soon Officers Cates, Nason, and Gondek arrived at the scene. At about this time, Zihra Saad convinced Joseph Saad to get their identification and hand it to Officer Keller. Officer Cates radioed for a supervisor while Officer Keller continued to explain to Zihra Saad that the police were there to investigate a harassing phone call. Joseph Saad was on the phone with his attorney, and Joseph and Zihra Saad stated that they believed that the police were retaliating against them because they had recently filed a lawsuit against the Dearborn Heights Police Department.[1] There was considerable tension at the scene, with Joseph Saad, Zihra Saad, and Officer Keller yelling while Officer Keller held the door open with his boot. When Sergeant Skelton arrived shortly afterward, Officer Keller advised him of what had occurred. Officer Keller and Sergeant Skelton agreed that Joseph Saad should be arrested for assault of a police officer and hindering an investigation.

---

[1] This lawsuit was filed in the Eastern District of Michigan, Case No. 10-12635, and is currently pending before the Sixth Circuit Court of Appeals. Joseph Saad was not a party to this suit, although it arose from an encounter between him and Dearborn Heights police officers.

The parties also dispute the details of the ensuing arrests.  Officers Keller, Nason, Gondek, Cates, and Sergeant Skelton all entered the home through the front door.  The officers advised Joseph Saad that they were arresting him, but Joseph Saad indicated that he was not going anywhere.  Officer Keller claims that Zihra Saad blocked the hallway, holding her arms out to prevent him from getting to Joseph Saad.  He recalled that Officer Gondek and Sergeant Skelton went around to the kitchen through the family room.  They grabbed Joseph Saad's arms and advised him that he was under arrest.  Joseph Saad pulled his arms away and resisted.  Officer Keller, who by now had made his way to where the other officers were standing, advised Joseph Saad that if he did not put his arms behind his back, he would be tased.  Joseph Saad refused to comply, and Officer Keller yelled, "Taser Taser Taser!"  Officer Keller then used his Taser on Joseph Saad, who fell to the ground with the other officers trying to handcuff him.  Joseph Saad continued to resist, despite the officers' commands, and was tased again.  After being tased a second time, Joseph Saad stopped resisting and the officers were able to handcuff him.  Defs.' Br. Ex. 1.

According to Joseph Saad, he simply backed up a few steps in the hallway when the defendant police officers entered the home.  He recalled that two officers came up behind him, and Officer Keller immediately used the Taser on him before he had a chance to comply.  J. Saad Dep. 29:13-25.  Joseph Saad claims that Officer Keller did not warn him that he would be tased.[2]  J. Saad Dep. 30:9-18.  Joseph Saad also testified that once he had

---

[2] The audio recording of the incident contradicts Joseph Saad's testimony in this respect. While Joseph Saad and the officers are yelling at each another, a male voice can be heard shouting, "Taser Taser Taser!"  Pls.' Resp. Br. Ex. 5, DHPD-08, at 21:28:05.

been handcuffed, the officers who were on top of him repeatedly slammed his head into the tile floor, causing injuries to his nose and face. J. Saad Dep. 30:19-25. Joseph Saad testified that Officer Gondek punched him several times while he was on the ground. J. Saad Dep. 31:16-22. Defendants assert that any injuries Joseph Saad sustained to his nose occurred while he was being taken to the ground and handcuffed.

While Joseph Saad was being apprehended and handcuffed, Officer Cates was with Zihra Saad. Officer Cates testified that Zihra Saad became irate and began screaming at her. Cates Dep. 73:13-16, Sep. 26, 2011. Officer Cates claims that Zihra Saad grabbed her shirt collar, pushed her, and scratched at her neck in order to try and get to Joseph Saad. Cates Dep. 75:23-76:6. Officer Cates testified that at this point, she advised Zihra Saad that she was going to be arrested for interfering with the officers, and ordered her to put her hands behind her back. Cates Dep. 78:4-11. According to Officer Cates, Zihra Saad then turned away and put her arms across her chest to avoid being handcuffed. Cates Dep. 78:19-79:3. Zihra Saad disputes this account of the facts. She testified that Officer Cates handcuffed her without ever talking to her. Z. Saad Dep. 27:25-28:5, Sep. 12, 2011. Zihra Saad admits that she struggled against the handcuffs because she did not want to be handcuffed. Z. Saad Dep. 77:5-6.

At this point, both Joseph and Zihra Saad were taken outside to be transported to the police station. Zihra Saad claims that as she was being shoved toward the police car, her knees gave out and she fell to the ground. She testified that Officer Cates "dragg[ed]" her all the way over to the police car, but could not recall whether Officer Cates was holding her hands or feet. Z. Saad Dep. 78:22-79:5. Officer Cates testified that Zihra Saad

5

dropped herself down to the ground to resist being taken to the police car. Cates Dep. 82:15-83:1. Officer Cates testified that she assisted Zihra Saad back to her feet and into the police car. Cates Dep. 83:13-84:25. Joseph Saad was placed into a different police car, and the they were both transported to the police station.

After booking at the police station, Joseph Saad complained of chest pains and was taken to Garden City Hospital for evaluation and treatment. At this time, Officer Keller was also treated for injuries to his foot and ankle. Joseph Saad was released from the hospital and returned to the Dearborn Heights Jail. Zihra Saad also complained of chest pains upon arriving at the police station. She was taken to Oakwood Hospital, where she was admitted and treated for a pre-existing heart condition.

Zihra Saad was subsequently charged with the crime of resisting and obstructing a police officer. Joseph Saad was charged with assaulting, resisting, and obstructing a police officer. At the preliminary examination, District Judge Mark J. Plawecki dismissed the charge against Zihra Saad, but bound Joseph Saad over for trial in the Wayne County Circuit Court. At trial, Circuit Judge Carole Youngblood granted Joseph Saad's motion for a directed verdict, concluding that because of inconsistencies in the police officers' testimony, a jury could not find him guilty beyond a reasonable doubt.

Joseph and Zihra Saad filed this suit in the Eastern District of Michigan, asserting a number of claims against the City of Dearborn Heights ("the City") and the defendant police officers. These include claims for unlawful search and seizure (Counts I and II); excessive force (Counts III and IV); conspiracy to retaliate for the filing of a lawsuit

against the Dearborn Heights Police Department (Count V); *Monell*[3] claims against the City based on the defendant officers' actions (Counts VI, VII, and VIII); assault and battery (Counts IX, X, and XI); intentional or reckless infliction of emotional distress (Counts XII and XIII); malicious prosecution (Counts XIV and XV); false arrest and false imprisonment (Counts XVI and XVII); and gross negligence (Count XVIII).

Defendants now move for summary judgment. Plaintiffs have agreed to dismiss the state law tort claims against the City, but oppose Defendants' motion in all other respects. Plaintiffs request that the Court enter summary judgment in their favor as to the remaining claims pursuant to Rule 56(f).

In the course of briefing Defendants' motion for summary judgment, Plaintiffs filed a sur-reply brief. This sur-reply includes an affidavit of Joseph Saad indicating that he never shoved or assaulted Officer Keller. Defendants have filed a motion to strike this sur-reply.

## II. Motion to Strike Plaintiffs' Sur-reply

The Court first addresses the motion to strike Plaintiffs' sur-reply. Although a party is not entitled to file a sur-reply brief under the Federal Rules of Civil Procedure, *Jones v. Northcoast Behavioral Healthcare Sys.*, 84 F. App'x 597, 599 (6th Cir. 2003), the Court has discretion to permit such a filing where it is reasonable. *Seay v. TVA*, 339 F.3d 454, 480 (6th Cir. 2003).

Defendants contend that Joseph Saad's affidavit impermissibly attempts to create a

---

[3] This is a reference to *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978).

material dispute of fact where none exists.  "[A] district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony."  *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006).  "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction."  *Id.*  "If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'"  *Id.* (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

The Court concludes that Joseph Saad's affidavit and deposition testimony are not contradictory.  In his affidavit, Joseph Saad states that he did not shove Officer Keller.  J. Saad Aff. ¶ 4.  Joseph Saad never testified at his deposition that he shoved Officer Keller.  Rather, he stated that as soon as he opened the front door, Officer Keller put his foot inside to prevent the door from closing.  J. Saad Dep. 27:1-5.  This excludes the possibility that a shove by Joseph Saad prompted Officer Keller to put his foot in the door.  Because the affidavit is not contradictory, it should be considered unless it constitutes an attempt to create a sham fact issue.  The Court does not believe that Joseph Saad's affidavit is the product of such an attempt.  During his deposition, Joseph Saad was not asked about shoving Officer Keller.  Thus, it could be fairly said that the affidavit simply clarifies facts that were not developed in his deposition testimony.  In such instances, the Sixth Circuit has concluded that a subsequently filed affidavit was properly considered in evaluating a motion for summary judgment.  *See King v. City of Eastpointe*, 86 F. App'x 790, 793 n.1

8

(6th Cir. 2003).  Furthermore, Joseph Saad argued at trial in Wayne County Circuit Court that he did not shove or assault Officer Keller.[4]  The trial concluded prior to the filing of this lawsuit.  Because the affidavit is consistent with the position Joseph Saad maintained prior to the filing of this action, the Court believes it is not an attempt to create a sham fact issue.  The Court finds no reason to strike the affidavit, and therefore denies the motion to strike Plaintiffs' Sur-reply.

### III. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue

---

[4] Although Joseph Saad did not testify at trial, his attorney made this argument in support of his motion for directed verdict, which was granted by Judge Youngblood.  *See* Trial Tr. 195-200, Nov. 22, 2010.

9

for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## IV. Analysis

At the outset, the Court notes that Plaintiffs have agreed to dismiss the state law tort claims against the City. Pls.' Br. 52. These claims include assault and battery (Counts IX, X, and XI); intentional or reckless infliction of emotional distress (Counts XII and XIII); malicious prosecution (Counts XIV and XV); false arrest and false imprisonment (Counts XVI and XVII); and gross negligence (Count XVIII). The Court accordingly dismisses these claims with respect to the City only.

### A. Illegal Entry and Illegal Arrest Claims

In Counts I and II of the Complaint, Joseph and Zihra Saad allege that the defendant police officers violated their Fourth Amendment rights by illegally entering their home and arresting them without probable cause. Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983. A § 1983 plaintiff must establish: "'(1) the deprivation of a right secured

10

by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).  It is undisputed that the defendant police officers acted under the color of state law.  The Court therefore need only consider whether Plaintiffs have established the deprivation of a federal right.

The Court first addresses Plaintiffs' claim of illegal entry.  "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 477-78, 91 S. Ct. 2022, 2044 (1971)).  Defendants do not dispute that the officers lacked a warrant to enter the Saad residence.  They argue, however, that entry into the home was justified by the "hot pursuit" exception to the warrant requirement.  "The Supreme Court has carefully crafted certain exceptions to the warrant requirement, one of which is the exigent-circumstances exception." *United States v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006).  The Supreme Court has articulated a number of situations which may give rise to exigent circumstances, including hot pursuit of a fleeing felon. *Id.* (citing *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947 (2006)).  Defendants specifically assert that Joseph Saad had committed the felony of assaulting a police officer by shoving Officer Keller.

Although the assault of a police officer is indeed a felony under Michigan law, *see* Michigan Compiled Laws § 750.81d, the Court does not believe that summary judgment is warranted here because the facts of the encounter are disputed.  Joseph Saad claims that he never shoved Officer Keller and that Officer Keller put his foot inside the home as soon as

11

the door was opened.  J. Saad Aff. ¶ 4; J. Saad Dep. 27:1-5.  When evaluating Defendants'

motion for summary judgment, the Court must accept Joseph Saad's account as true.  "[I]f

there is no underlying felony, the 'hot pursuit of a fleeing felon' exception to the warrant

requirement is untenable."  *Cummings v. City of Akron*, 418 F.3d 676, 686 (6th Cir. 2005).

Defendants have not identified any other applicable exception to the warrant requirement.

Thus, if Joseph Saad's testimony is believed, the officers' entry into the home was illegal.

The Court concludes that a material dispute of fact precludes summary judgment with

respect to Plaintiffs' claims of illegal entry.

The Court next considers Plaintiffs' claims of illegal arrest.  "In order for a wrongful

arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable

cause."  *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).  "Probable cause exists if

the facts and circumstances known to the officer warrant a prudent man in believing that

the offense has been committed."  *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009)

(quoting *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2002)).

Joseph Saad maintains that he did not shove Officer Keller, and the Court accepts

this assertion for purposes of Defendants' motion.  Defendants have not raised any other

lawful basis for Joseph Saad's arrest.  The Court cannot conclude that Defendants have

established probable cause to arrest Joseph Saad.  Therefore, summary judgment must be

denied with respect to Joseph Saad's illegal arrest claim.

Defendants argue that the state court's decision to bind over Joseph Saad for trial

precludes relitigation of probable cause in this suit.  The Court disagrees.  "[W]here the

state affords an opportunity for an accused to contest probable cause at a preliminary

hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Coogan v. Wixom*, 820 F.2d 170, 175 (6th Cir. 1987).  This probable cause determination has no preclusive effect, however, "if there is evidence that the claim of malicious prosecution is based on a police officer's supplying false information to establish probable cause."  *Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007) (citing *Hinchman v. Moore*, 312 F.3d 198, 202-03 (6th Cir. 2002)).  "When a plaintiff claims (and offers evidence suggesting) that an earlier probable cause determination was made on the basis of false information provided by a police officer, the plaintiff is no longer litigating the same fact or issue, and so does not trigger collateral estoppel."  *Zulock v. Shures*, 441 F. App'x 294, 304 (6th Cir. 2010) (citing *Hinchman*, 312 F.3d at 202-03; *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001)).  Joseph Saad argued at the preliminary examination that Officer Keller's testimony regarding the alleged shove was false.  Prelim. Exam. Tr. 59.  Joseph Saad's deposition testimony and his affidavit support this argument. Accordingly, the state court's decision does not preclude Joseph Saad from contesting the issue of probable cause in this action.

The Court concludes that a genuine dispute of fact also precludes summary judgment with respect to Zihra Saad's illegal arrest claim.  Zihra Saad testified that she did not push or touch Officer Cates.  Z. Saad Dep. 28:9-29:4.  The Court must accept this assertion as true for purposes of Defendants' motion.  Defendants have not identified any other basis for arresting Zihra Saad.  If believed, Zihra Saad's testimony establishes a lack of probable cause to arrest her for obstruction.  Although there is evidence contradicting Zihra Saad's

testimony, the Court does not believe that the evidence is so one-sided that Defendants must prevail as a matter of law. *See Liberty Lobby*, 477 U.S. at 251-52, 106 S. Ct. at 2512.

**B. Excessive Force Claims**

In Counts III and IV, Plaintiffs assert that they were subjected to excessive force by the defendant police officers. "Claims of excessive force are analyzed under an objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene." *Miller*, 606 F.3d at 251 (citing *Graham v. Connor*, 490 U.S. 386, 395-96, 109 S. Ct. 1865, 1871 (1989)). "'The question . . . is whether, under the totality of the circumstances, the officer's actions were objectively reasonable.'" *Id.* (quoting *Fox v. DeSoto*, 489 F.3d 227, 236-37 (6th Cir. 2007)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.* at 396-97, 109 S. Ct. at 1872.

Zihra Saad's excessive force claim involves two separate incidents. First, she claims that she was handcuffed too tightly. "The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Miller*, 606 F.3d at 252 (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)). "[F]or a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence

14

to create a genuine issue of material fact that: (1) he or she complained that the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Id.* (quoting *Morrison*, 583 F.3d at 401). Plaintiffs have satisfied this standard. On the audio recording of the incident, Zihra Saad can be heard stating, "You're hurting me." Pls.' Br. Ex. 5, DHPD-08, at 21:29:40. She can also be heard, saying, "My hands . . . my hands."[5] *Id.* at 21:31:55. In the booking video, when Zihra Saad's handcuffs are removed, she is seen rubbing her wrists. Pls.' Br. Ex. 8, at 9:57:30. Moreover, photographs presented by Plaintiffs indicate that Zihra Saad suffered injuries to her wrists. Pls.' Br. Ex. 18, Dkt. #59. Although Zihra Saad admitted that she struggled against the handcuffs while they were being applied, the Court cannot say with certainty that her injuries resulted from her resistance rather than the handcuffing itself. The Court therefore finds that a dispute of fact precludes summary judgment with respect to Zihra Saad's handcuffing claim.

Zihra Saad also asserts that excessive force was used in transporting her to the police car. She testified that she fell at the steps of the front porch, and Officer Cates dragged her from the front porch all the way to the police car. Z. Saad Dep. 39:12-24. Officer Cates testified that Zihra Saad dropped to the ground on the way to the police car. Cates Dep. 82:15-17. Officer Cates recalled that after being helped back to her feet, Zihra Saad walked to the car under her own power. Cates Dep. 84:1-25. The Court typically accepts

---

[5] This is heard on the in-car audio recording, indicating that it was said while Zihra Saad was seated in the police car. It is unclear from the video whether any of the defendant police officers heard this complaint, but for purposes of Defendants' motion for summary judgment, the Court draws this inference in Plaintiffs' favor.

the non-movant's evidence as true, but "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007). Here, the video recording from one of the police cars contradicts Zihra Saad's testimony. The Court applies *Scott* cautiously and only with respect to factual assertions that are actually contradicted by the video recording. *See Coble v. City of White House*, 634 F.3d 865, 870 (6th Cir. 2011) (audio recording's contradiction of part of a witness's testimony does not allow the court "to discredit his entire version of the events"). In the recording, Zihra Saad can be seen walking with Officer Cates over to her police car. Pls.' Br. Ex. 5, DHPD-14, at 21:29:50. In light of this video evidence, Zihra Saad's account of being dragged across the lawn to the police car is, at best, an extreme exaggeration. The Court does not believe that a rational jury could find that Officer Cates used excessive force in bringing Zihra Saad to the police car. The Court accordingly grants summary judgment for Defendants with respect to this claim.

Joseph Saad asserts that he was subjected to excessive force when the defendant police officers: (1) used a Taser weapon on him twice; (2) punched him while he was on the ground and slammed his head into the tile floor; and (3) dragged him to the police car and threw him into the back seat. The Court first considers the use of the Taser. "An officer making an investigative stop or arrest has 'the right to use some degree of physical coercion or threat thereof to effect it.'" *Fox*, 489 F.3d at 236 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872). "Relevant considerations include 'the severity of the crime at

16

issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872). If Joseph Saad's testimony that he never shoved Officer Keller is accepted as true, there was no reason to believe that he had committed a crime before he was arrested. There was no indication that Joseph Saad was attempting to flee. In fact, on the audio recording, he can be heard saying, "I'm not going anywhere, you get out of my house." Pls.' Br. Ex. 5, DHPD-08, at 21:27:40. Joseph Saad also testified that he had no opportunity to physically resist the officers before they shot him with the Taser. J. Saad Dep. 29:13-31:4. Accepting Joseph Saad's account of the events as true and drawing all reasonable inferences in Plaintiffs' favor, the Court believes that a question of fact remains as to whether use of the Taser was reasonable under these circumstances.

The Court also believes that a genuine dispute of fact remains with respect to Joseph Saad's claim that the police officers slammed his head into the tile floor. Defendants deny that this occurred, but the Court cannot weigh the credibility of testimony in evaluating a motion for summary judgment. Moreover, there is evidence indicating that Joseph Saad sustained injuries to his face during the encounter. An injury to his nose is apparent in a photograph taken shortly after the incident. *See* Defs.' Br. Ex. 16. In the audio recording, Joseph Saad can be heard complaining that the defendant officers injured his nose. Pls.' Br. Ex. 5, DHPD-08, at 21:29:00. Medical records show that Joseph Saad complained of injuries to his nose when he was treated at the hospital. *See* Defs.' Br. Ex. 6 at 2. Defendants note that these injuries could have occurred when he was taken down to the

17

ground and do not necessarily indicate that his head was repeatedly slammed into the floor.  This may be true, but the Court draws all reasonable inferences in Plaintiffs' favor for purposes of Defendants' motion.  The Court believes that a genuine dispute of fact precludes summary judgment with respect to this claim.

The Court next considers Joseph Saad's claim that he was dragged to the police car and thrown into the back seat.  See Compl. ¶ 92(4).  This assertion is blatantly contradicted by a video recording from one of the police cars, which shows Joseph Saad walking to a police car accompanied by two police officers.  After one of the officers opens the door to the car, Joseph Saad steps into the back seat and sits in the vehicle on his own.  *See* Pls.' Br. Ex. 5, DHPD-14, at 21:30:15.  In light of this video evidence, no rational factfinder could believe Joseph Saad's account of being dragged to and thrown into the vehicle.  To the extent that the officers used any force in leading Joseph Saad to the car, it was clearly not excessive.  The Court therefore grants summary judgment in Defendants' favor with respect to this claim.

## C. Qualified Immunity

The defendant police officers assert that they are entitled to qualified immunity with respect to Plaintiffs' claims against them.  "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).  To resolve a qualified immunity claim, the Court must determine if: (1) the plaintiff has alleged facts

18

making out the violation of a constitutional right; and (2) the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 232, 129 S. Ct. at 815-16. The Court may exercise its discretion in determining which of the two prongs of this analysis to address first. *Id.* at 236, 129 S. Ct. at 818.

The Court believes that Plaintiffs' § 1983 claims implicate well-settled constitutional rights. Plaintiffs have "clearly established" rights to be free from arrest absent probable cause, *Everson v. Leis*, 556 F.3d 484, 500 (6th Cir. 2009), and to be free from unwarranted entry into their home by the police absent exigent circumstances. *Hall v. Shipley*, 932 F.2d 1147, 1151 (6th Cir. 1991). If Plaintiffs' evidence is believed, it establishes violations of these rights. This defeats qualified immunity with respect to the illegal entry and illegal arrest claims.

As for the excessive force claims, Plaintiffs enjoy a "clearly established" right to be free from unduly forceful handcuffing. *Miller*, 606 F.3d at 252. Assuming that Zihra Saad's testimony and evidence is true, the Court believes that she has shown a violation of this right. Turning next to Joseph Saad's excessive force claims, the Court notes that qualified immunity often protects officers "'from the sometimes hazy border between excessive and acceptable force.'" *Id.* at 254 (quoting *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004)). "An officer should be entitled to qualified immunity if he made an objectively reasonable mistake as to the amount of force that was necessary under the circumstances with which he was faced." *Id.* (citing *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002)). Joseph Saad's account of the facts, however, does not present a close call. If Joseph Saad was subdued with a Taser before he had a

19

chance to resist arrest and then beaten while he was handcuffed on the ground, the Court believes that the defendant officers would not be entitled to qualified immunity.  These factual disputes preclude a grant of summary judgment.

## D. Conspiracy Claim

Count V asserts that Defendants conspired to retaliate against Plaintiffs for the filing of a previous lawsuit against the Dearborn Heights Police Department, in violation of § 1983.  Compl. ¶¶ 96-99.  Defendants argue that this claim is barred by the intra-corporate conspiracy doctrine, which holds that an entity cannot conspire with its own agents or employees:

> "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy.  A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) (quoting *Nelson Radio & Supply Co., Inc. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)); *see also United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 753 (6th Cir. 2004) ("an entity cannot conspire with its own agents or employees").  *Hull* applied the intra-corporate conspiracy doctrine to bar a conspiracy claim under 42 U.S.C. § 1985 against defendants employed by a municipality.  It is not disputed that the defendant police officers are employed by the City and were acting in their capacity as police officers.  The Court concludes that the intra-corporate conspiracy doctrine bars Plaintiffs' conspiracy claim.

## E. *Monell* Claims

Plaintiffs raise several claims of municipal liability against the City.  They assert that the City has an unconstitutional policy of failing to investigate criminal complaints made by police officers.  This is based on the alleged failure of Detective Sergeant Terri Smith to investigate the allegations against Joseph and Zihra Saad before criminal charges were filed.  Pls.' Br. 36-37.  Plaintiffs, however, have not identified any authority establishing a constitutional right to an independent investigation before a criminal complaint is filed.  The Court is unaware of any such authority, and concludes that the policy identified by Plaintiffs is not unconstitutional.

Second, Plaintiffs argue that the City has an unconstitutional policy or custom of creating exigent circumstances in order to allow a warrantless entry into a citizen's home.  Pls.' Br. 40-41.  This claim was not raised in the Complaint.  A party may not expand its claims to assert new theories in response to motion for summary judgment.  *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007).  Moreover, even if the claim were properly raised, it appears to lack merit.  Plaintiffs rely on the testimony of Dearborn Heights Police Chief Lee Gavin.  Chief Gavin testified that police officers may go to a person's home to attempt to obtain information without a warrant, and that if the homeowner refuses, they would write a report and let detectives follow up.  If a felony is being investigated, Chief Gavin indicated that "you have to do what you can to obtain the name or hot pursuit the person."  Gavin Dep. 43:2-9, Jan. 30, 2012.  He did not advocate manufacturing exigent circumstances, as Plaintiffs contend.  Hot pursuit of a fleeing felon is one of the established exceptions to the warrant requirement.  *Huffman*, 461 F.3d at 782.  Indicating that officers should take advantage of that exception does not suggest that

21

exigent circumstances should be "manufactured" where they do not otherwise exist.  The Court concludes that Plaintiffs have failed to present evidence of an unconstitutional policy of manufacturing exigent circumstances.

Plaintiffs also claim that the City has an unconstitutional policy with respect to the use of Taser weapons, because the policy "allows the officer to use their own reasonable subjective belief as to whether any situation creates danger . . . rather than an objective probable cause belief."  Compl. ¶ 110.  The City's policy states that an officer's decision to deploy a Taser "must be made dependent on the actions of the subject(s) or threat facing the officer(s) and the totality of the circumstances surrounding the incident.  The use of the Taser must be reasonable and necessary."  *See* Defs.' Br. Ex. 10 § X.A.1.  This mirrors the *Graham* standard, which considers the totality of the circumstances to determine whether an officer's action is objectively reasonable.  The policy does not violate constitutional standards.

Plaintiffs assert that the City failed to adequately train its police officers regarding the use of force and unreasonable searches.  To succeed in this claim, Plaintiffs must demonstrate that: (1) the training program is inadequate to the tasks that the officers must perform; (2) the failure to train evidences a deliberate indifference to the rights of persons with whom the officers come into contact; and (3) the deficiency is closely related to or actually caused Plaintiffs' injury.  *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008).  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 1391 (1997).  Deliberate

22

indifference can be shown through "'prior instances of unconstitutional conduct demonstrating that the [defendant] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Plinton*, 540 F.3d at 464 (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). "In the alternative, 'a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability.'" *Id.* (quoting *Brown*, 520 U.S. at 409, 117 S. Ct. at 1391).

Plaintiffs have failed to introduce any evidence demonstrating that the City's training of police officers is inadequate. Plaintiffs note that the City does not require its officers to receive specific training on the use of force, outside of the training provided by the police academy. They assume that additional training on this topic is necessary, but have failed to identify any deficiencies in the standard police academy training that must be remedied. The same is true with respect to Plaintiffs' allegation that police officers require additional training on the Fourth Amendment in the context of warrantless arrests and entries into private residences. It is not the task of federal courts to engage in "an endless exercise of second-guessing municipal employee-training programs." *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 1206 (1989). Absent some showing that the training provided is inadequate, Plaintiffs' claim fails.

Even if Plaintiffs could establish inadequate training, they have failed to introduce evidence that would satisfy the deliberate indifference standard. Plaintiffs point to four lawsuits filed against the defendant officers during a six-year period. This is insufficient

to demonstrate a history of abuse.  *See Jones v. Muskegon Cnty.*, 625 F.3d 935, 946 (6th Cir. 2010) (five incidents were insufficient to establish "a widespread, permanent, and well-settled" pattern of illegality).  Nor have Plaintiffs shown that the City's failure to train will obviously result in the violation of citizens' rights.  Because Plaintiffs cannot establish deliberate indifference, the City must be granted summary judgment on the inadequate training claim.

**F. Governmental Immunity**

The defendant police officers assert that they are entitled to governmental immunity with respect to Plaintiffs' state law tort claims.  The Michigan Supreme Court outlined the test that courts must follow in determining whether a defendant is entitled to governmental immunity from intentional tort liability in *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (Mich. 2008).  The defendant claiming immunity must show: (1) that his challenged acts were taken during the course of his employment and he was acting within the scope of his authority or reasonably believed that he was acting within the scope of his authority; (2) the challenged acts were taken in good faith, or were not undertaken with malice; and (3) the challenged acts were discretionary.  *Id.* at 480, 760 N.W.2d at 228.  The defendant bears the burden of establishing governmental immunity.  *Id.* at 479, 760 N.W.2d at 227-28.

The Court believes that the defendant officers have not established their entitlement to governmental immunity.  Accepting Plaintiffs' version of the facts as true, the Court finds that malice could reasonably be inferred from the alleged misconduct.  According to Joseph Saad, the police entered his home absent a warrant or probable cause, used a Taser

on him without giving him a chance to cooperate, and slammed his head into the tile floor. These facts, if true, could give rise to the inference that the defendant police officers acted with malice.  At this stage of the proceedings, Plaintiffs are entitled to this inference.  As for Zihra Saad's claims that she was handcuffed with excessive force, Michigan courts have denied governmental immunity to police officers that allegedly fastened handcuffs too tightly, resulting in physical injury to an arrested person.  *See Oliver v. Smith*, 269 Mich. App. 560, 566-67, 715 N.W.2d 314, 318 (Mich. Ct. App. 2006).  The Court does not believe that Defendants' motion for summary judgment can be granted on the basis of governmental immunity.

**G. Assault and Battery Claims**

Defendants assert that Plaintiffs' assault and battery claims fail because the force used to arrest Plaintiffs was not excessive.  *See Young v. Barker*, 158 Mich. App. 709, 723, 405 N.W.2d 395, 402 (Mich. Ct. App. 1987) ("[I]t is well established that an arresting officer may use such force as is reasonably necessary to effect a lawful arrest.").  As noted above, genuine disputes of fact remain with respect to Defendants' use of excessive force, precluding summary judgment on the assault and battery claims.

**H. Intentional Infliction of Emotional Distress**

Plaintiffs assert claims of intentional infliction of emotional distress based on the use of excessive force to restrain and arrest Joseph Saad.  Under Michigan law, this requires Plaintiffs to show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.  *Jones*, 625 F.3d at 948 (citing *Vredevelt v. GEO Grp., Inc.*, 145 F. App'x 122, 135 (6th Cir. 2005)).  "Such conduct must be 'so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999)).

> It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. In reviewing a claim of intentional infliction of emotional distress, we must determine whether the defendant's conduct is sufficiently unreasonable as to be regarded as extreme and outrageous. The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

*Id.* (quoting *Graham*, 237 Mich. App. at 674, 604 N.W.2d at 716) (citations omitted). While "insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to constitute the intentional infliction of emotional distress, *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603, 374 N.W.2d 905, 909 (Mich. 1985) (quoting Restatement (Second) of Torts § 46 cmt. d), the Court believes that the misconduct alleged in this case is of a greater degree. If Plaintiffs' testimony is believed, a jury might find Defendants' misconduct sufficiently outrageous to constitute the intentional infliction of emotional distress.

## I. False Arrest, False Imprisonment, and Malicious Prosecution

Plaintiffs assert claims of false arrest, false imprisonment, and malicious prosecution under Michigan law. Defendants contend that these claims fail because probable cause existed to arrest Joseph and Zihra Saad. The Court has already concluded that a dispute of fact remains with respect to probable cause, precluding summary judgment.

26

**K. Gross Negligence**

Plaintiffs assert that Defendants' conduct was reckless and grossly negligent.  As Defendants correctly note, however, Michigan courts have rejected attempts to transform intentional tort claims into negligence claims by expressing them in terms of a breach of duty.  *See VanVorous v. Burmeister*, 262 Mich. App. 467, 483-84, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004); *Smith v. Stolberg*, 231 Mich. App. 256, 258-59, 586 N.W.2d 103, 104-05 (Mich. Ct. App. 1998).  Plaintiffs' claims focus on the purposeful use of excessive force by the defendant police officers, and are therefore best characterized as intentional torts rather than mere negligence.  To the extent that Plaintiffs allege negligence based on a failure to provide medical attention, their claims fail.  It is undisputed that both Joseph and Zihra Saad were taken to nearby hospitals to receive medical attention shortly after arriving at the police station.  The Court accordingly grants summary judgment in favor of Defendants as to the gross negligence claim (Count XVIII).

Plaintiffs have sought leave to substitute two persons for the named John Doe with respect to the gross negligence claim.  Pls.' Br. 51.  Because the Court has concluded that Defendants must be granted summary judgment on this claim, Plaintiffs' request is denied as moot.  To the extent that Plaintiffs seek to expand the gross negligence claim to include an alleged failure to investigate criminal complaints filed against Plaintiffs, *see id.*, this is improper in response to a motion for summary judgment.  *Bridgeport Music*, 508 F.3d at 400.  Moreover, the Court does not believe that the alleged failure to investigate criminal allegations can be fairly characterized as grossly negligent; at most, Plaintiffs have alleged ordinary negligence.  *See* Michigan Compiled Laws § 691.1407(7)(a) ("Gross negligence"

27

means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results). Governmental immunity would preclude such a claim. *See* Michigan Compiled Laws § 691.1407(2). Amendment of the Complaint would therefore be futile.

### V. Conclusion

The Court concludes that disputes of material fact preclude summary judgment with respect to several of Plaintiffs' claims. Pursuant to Plaintiffs' stipulation, however, the Court dismisses the state law tort claims against the City. These claims include assault and battery (Counts IX, X, and XI); intentional or reckless infliction of emotional distress (Counts XII and XIII); malicious prosecution (Counts XIV and XV); and false arrest and false imprisonment (Counts XVI and XVII).

The Court also dismisses the *Monell* claims against the City (Counts VI, VII, and VIII) and the conspiracy claim (Count V) and gross negligence claim (Count XVIII) against all Defendants for reasons set forth above. The Court denies Defendants' motion for summary judgment with respect to Plaintiffs' remaining claims.

Accordingly,

**IT IS ORDERED** that Defendants' motion to strike Plaintiffs' Sur-reply is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiffs' claims of conspiracy (Count V) and gross negligence (Count XVIII).

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **GRANTED** with respect to the following claims against the City of Dearborn Heights

**only**: *Monell* claims (Counts VI, VII, and VIII); assault and battery (Counts IX, X, and XI); intentional or reckless infliction of emotional distress (Counts XII and XIII); malicious prosecution (Counts XIV and XV); and false arrest and false imprisonment (Counts XVI and XVII).  The City of Dearborn Heights is **DISMISSED** from this action.

   **IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiffs' remaining claims.

                              s/PATRICK J. DUGGAN
                              UNITED STATES DISTRICT JUDGE

Copies to:

Haytham Faraj, Esq.
Nemer Hadous, Esq.
Jeffrey R. Clark, Esq.
Joseph Nimako, Esq.
Patrick R. Sturdy, Esq.